IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| PURVI, LLC, | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| NATIONAL FIRE & MARINE INSURANCE COMPANY AND KK INSURANCE AGENCY, | NO. 18-822 |
| Defendants. | |

# MEMORANDUM OPINION

Following a fire that damaged Plaintiff Purvi LLC's motel, Plaintiff filed suit against Defendants National Fire & Marine Insurance Company ("National") and KK Insurance Agency ("KK"). Plaintiff alleges that National (1) breached its contract with Plaintiff, and (2) violated 42 Pa. C.S.A. § 8371 by acting in bad faith toward Plaintiff. Separately, Plaintiff alleges that KK negligently failed to procure proper and adequate insurance coverage for Plaintiff.

Pending now is National's motion for partial summary judgment as to the bad faith claim and KK's motion for summary judgment as to the negligence claim. For the reasons that follow, the motions will be granted.

I. **Background**

The following facts are undisputed. Plaintiff Purvi LLC was created in 1997 by Jyoti Panwala, her husband, and her son. That year, Plaintiff purchased the Lincoln Motel. Panwala is Plaintiff's managing partner, is responsible for doing "almost everything to run the business," and "was the sole and final decision maker with regard to insurance purchases for Purvi."

Although Plaintiff initially used another insurance agency to facilitate its purchase of insurance for the motel, in 2010 Plaintiff switched to using KK as its insurance broker. Each year, Panwala would receive insurance applications from KK, which she understood "would

serve as the basis of the insurance." She returned to KK the application for insurance for the 2016-17 policy term, just as she had done in years past. The application included a request for certain maximum limits of insured losses: a $2,250,000 building limit, a $123,750 content limit, and a $221,550 business income limit. KK then provided Plaintiff several insurances quotes with varying policy limits for the 2016-17 term. Plaintiff selected the quote provided by National. The selected policy (the "Policy") had the same limits as requested in the application, and also a personal property limit of $5,000. The Policy included the following language with respect to loss coverage: In the event of loss or damage, National would "not pay more for loss or damage on a replacement cost basis than the least of" (1) the applicable insurance limit; (2) the cost to replace with property "[o]f comparable material and quality" and "used for the same purpose;" or, (3) "[t]he amount actually spent that is necessary to repair or replace the lost or damaged property."

In May 2016, while covered by National's Policy, a fire damaged the motel. After the fire, National retained the services of various third-parties to estimate the necessary repair costs.[1] Based on those estimates, as well as correspondence with Plaintiff, National ultimately paid Plaintiff on various claims related to the fire, including as relevant here $1,583,818.56 on the building claim and $4,160.09 on the office contents claim. Plaintiff, however, claims losses far beyond those sums in that it contracted with various firms to repair the motel for a cost that exceeded the Policy's $2,250,000 building limit.[2]

---

[1] Plaintiff purports to "deny" this fact but offers no substantive reason for the denial. As the various third-parties' reports are included in the record, the Court will take as true the fact that National indeed retained these services. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[2] While the parties dispute the amount Plaintiff actually spent, the Court need not wade into that controversy in order to resolve the pending motions. It suffices to say that the parties appear to agree that Plaintiff spent more than National has reimbursed.

## II. Legal Standards

Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989). Materiality of facts is determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018) (internal quotation marks omitted). "[A]ll reasonable inferences" must be drawn in the non-moving party's favor. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

When interpreting Pennsylvania statutes, this Court must follow interpretations of the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by the Pennsylvania Supreme Court, this Court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

## III. Analysis

National argues that summary judgment must be granted on Plaintiff's claim brought under 42 Pa. C.S.A. § 8371, and KK argues that summary judgment must be granted on Plaintiff's claim that KK negligently failed to procure adequate insurance for Plaintiff.

### A. Claim Against National

Under Pennsylvania law, an insured can recover damages from an insurer "[i]n an action arising under an insurance policy . . . if the court finds that the insurer has acted in bad faith

3

toward the insured[.]" 42 Pa. C.S.A. § 8371. "[T]o prevail in a bad faith insurance claim . . . a plaintiff must demonstrate . . . (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l. Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Pennsylvania courts interpret the term "bad faith" in the insurance context to mean:

> [A]ny frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)).

Plaintiff's argument is that, in essence, the Policy required National to compensate Plaintiff for any claimed losses covered by the Policy, and that because the Policy is so clear, a failure to do so could only be in bad faith. In support, Plaintiff points to invoices and other documents for the building claim indicating that Plaintiff has made payments to contractors to repair the motel in excess of the approximately $1.6 million that National has already compensated Plaintiff. Thus, Plaintiff contends that because "the fire loss was undisputedly covered" by the policy, National's failure to fully compensate Plaintiff demonstrates bad faith.

Plaintiff's argument, however, misreads the Policy. The relevant provision in the Policy provides that "[i]n the event of [covered] loss or damage," National will "not pay more for loss or damage on a replacement cost basis than <u>the least of</u>" either the "cost to replace" with property of "comparable material and quality" and "used for the same purpose" or "[t]he amount actually spent that is necessary to repair or replace the . . . damaged property." Thus, the Policy allows room for disagreement between the parties as to whether the invoices Plaintiff submitted

4

were more than the "cost to replace" with property of "comparable material and quality"—and as a result National's failure to fully compensate the claimed loss is not evidence of bad faith. And indeed, National points to estimates completed by third-party consultants and contractors that indicate the building could have been repaired and replaced for significantly less than the amount Plaintiff claimed.[3]

Plaintiff, on the other hand presents no evidence beyond the invoices indicating a failure to fully compensate. But, for those invoices to create a genuine dispute of material fact, the Court would need to accept Plaintiff's argument that a failure to pay claims submitted by Plaintiffs, on its own, could show that National acted with a "dishonest purpose," *Terletsky*, 649 A.2d at 688—that is, in bad faith. That position is squarely contradicted by the terms of the Policy. Therefore, summary judgment must be granted to National on Plaintiff's bad faith claim.[4]

### B. Claim Against KK

Plaintiff argues that KK—Plaintiff's insurance broker—negligently failed to procure adequate insurance for Plaintiff because Plaintiff's losses in the fire exceeded the coverage limits on its Policy. In Pennsylvania, insurance brokers "are primarily in the business of acting as an intermediary between insurance companies and clients." *Wisniski v. Brown & Brown Ins. Co. of Pa.*, 906 A.2d 571, 581 (Pa. Super. 2006). Although brokers owe their clients a duty of good faith and fair dealing, *Londo v. McLaughlin*, 587 A.2d 744, 747 (Pa. Super. 1991), they have no

---

[3] Of course, whether National's third-party estimates are accurate is a question of fact that can reasonably be disputed. But the accuracy of the estimates is not at issue in the bad faith claim (it may, however, be at issue in Plaintiff's breach of contract claim, but National has not moved for summary judgment as to that claim). Instead, the only question here is whether National acted in bad faith by relying on them. Plaintiff has offered no reason to believe that is the case.

[4] Plaintiff purports to make essentially the same argument as to the office contents claim—but fails to cite to the record in support its arguments. *See* Fed R. Civ. P. 56(c)(1). In any event, the office contents claim fails for the same reason the building claim fails: merely showing that National did not pay the entire amount Plaintiff claimed is not, on its own, evidence of bad faith.

obligation to "advise the insured as to the type or amount of available coverage, or to obtain total/full coverage, or explain the policy and its coverages and/or exclusions, absent a special relationship." *Stern Family Real Estate P'ship v. Pharmacists Mut. Ins. Co.*, 2007 WL 951603, *3 (W.D. Pa. Mar. 27, 2007) (applying Pennsylvania law). While "[a] special relationship has not really been defined by the Pennsylvania courts," some courts have held that such a relationship may be established "when [an] insurance agent 'holds himself or herself out as an insurance specialist, consultant, or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured.'" *Id.* at 4 n.10 (quoting Couch on Insurance 3d, § 46-39 at 46-52 & n.49). A broker may also be liable where it "neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault." *Laventhol & Horwath v. Dependable Ins. Assocs., Inc.*, 579 A.2d 388, 391 (Pa. Super. 1990) (internal citation omitted).

KK contends that no "special relationship" existed between KK and Plaintiff, and therefore that KK had no duty to advise Plaintiff as to what insurance it should purchase. Plaintiff fails to respond to this argument, thereby waiving the opportunity to contest it. *Seals v. City of Lancaster*, 553 F. Supp.2d 427, 432-33 (E.D. Pa. 2008) ("Plaintiff's failure to [respond to a portion of defendant's motion for summary judgment] constitutes abandonment of those claims."). Instead, Plaintiff cites a variety of other duties, such as duty of care, *see Consol. Sun Ray v. Lea*, 401 F.2d 650, 656 (3d Cir. 1968), and a duty good faith and loyalty, *see Kribbs v. Jackson*, 129 A.2d 490, 494-95 (Pa. 1957). But even as to those duties, Plaintiff offers no reason—much less citation to the record in support of—why KK breached these duties. Nor has Plaintiff pointed to any evidence of record that would support a conclusion that KK had an obligation as a broker to ensure that Plaintiff had the coverage limits that it wanted or needed.

6

KK also contends that the Policy was not "materially defective," arguing that although Pennsylvania courts have not offered a practical definition of the term, "[b]y its plain meaning a materially defective policy would be faulty in some important way." KK notes that, "at worst," the Policy "covered nearly the entire cost of replacing a building that was 'completely destroyed,'" which should not rise to the level of "materially defective." Plaintiff again fails to respond in any way beyond the repeated assertion that the policy was "materially defective." *See Seals*, 553 F. Supp.2d at 432-33 (failure to respond constitutes waiver).

Therefore, Plaintiff has failed to raise a genuine dispute of material fact as to whether KK violated any duty—whether a duty to advise, or otherwise—and, thus, KK's motion will be granted.

An appropriate order follows.

**February 12, 2019**                              **BY THE COURT:**

                                                    **/s/ Wendy Beetlestone**
                                                    _____
                                                    **WENDY BEETLESTONE, J.**